## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 15-CIV-80352-Bloom/Valle

USA NUTRACEUTICALS GROUP, INC.,
and ULTRA-LAB NUTRITION, INC., d/b/a
Beast Sports,

      Plaintiffs,

v.

BPI SPORTS, LLC and BPI SPORTS
HOLDINGS, LLC,

      Defendants.

_____/

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court upon Defendants, BPI Sports, LLC and BPI Sports Holdings, LLC's Motion for Preliminary Injunction, ECF No. [48] ("Motion"). The Court has reviewed the Motion, all supporting and opposing filings, the record in this case, and convened the parties for oral argument on February 18, 2016 in Miami, Florida. Accordingly, the Court is now fully advised as to the premises. After thorough review of the submitted evidence and the parties' arguments, the Court finds that the Motion must be denied.

### I. BACKGROUND

This case initially involved the alleged misappropriation and use of Plaintiffs/Counter-Defendants, USA Nutraceuticals Group, Inc., and Ultra-Lab Nutrition, Inc. d/b/a Beast Sports' trade dress and related false advertising and unfair competition claims. *See generally* Amended Complaint, ECF No. [47]. Specifically, Plaintiffs/Counter-Defendants, USA Nutraceuticals Group, Inc., and Ultra-Lab Nutrition, Inc. d/b/a Beast Sports (collectively, "Beast") assert eight claims against Defendants/Counter-Plaintiffs, BPI Sports, LLC and BPI Sports Holdings, LLC

(collectively, "BPI"): trade-dress infringement and false advertisement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Counts I, IV, and VI); unfair competition under both federal and state law (Counts II, III, and VIII); and a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 (Count VII).[1]  *Id.*  On June 4, 2015, BPI filed its Answer and Affirmative Defenses, ECF No. [32], which was subsequently amended to assert five counterclaims mimicking those claims brought by Beast: trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(a), and Florida common law (Counterclaims I and III, respectively); false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Florida common law (Counterclaims II and IV, respectively); and a violation of FDUTPA, Fla. Stat. § 501.204 (Counterclaim V).  *See* Amended Answer, Affirmative Defenses, and Counterclaims ("BPI Counterclaims"), ECF No. [44].

Beast develops, markets, and sells a wide range of sports nutrition supplements (the "Beast Products").  Amended Complaint ("Amend. Compl."), ECF No. [47] at ¶¶ 2, 13. Throughout the years, the Beast Products have been branded with various trademarks, including, but not limited to, "Beast," "Beast Sports," "Beast Mode," and "Train Like a Beast."  *Id.*  Since approximately 2013, the Beast Products have been packaged using the color "Beast Blue," as well as various trademarks and "a prominent 'B' in black lettering."  *Id.*  The stylized "B" represents Beast's house mark, which Beast has used since 2008.  *See* Declaration of Anthony Altieri ("Altieri Decl."), ECF No. [54-3] at ¶ 3.  According to the Amended Complaint, the Beast Products have had substantial success and have been awarded "Break Out Brand of the Year" in

---

[1] On November 23, 2015, Beast amended, raising additional violations of § 43(a) of the Lanham Act, FDUTPA, and state-law unfair competition, all arising from alleged misinformation placed on BPI's products, specifically, "Best BCAA," a product containing certain amounts of particular branched-chain amino acids (Counts VI, VII, and VIII, respectively).  *See* Amended Complaint, ECF No. [47] at ¶¶ 51-67.

2014 by BodyBuilding.com.  Amend. Compl. at ¶ 15.  Beast contends that this success "has been based largely on its unique and distinctive Beast Blue trade dress."  *Id.* at ¶ 17.  Similarly, BPI manufactures, markets, and sells competing products (the "BPI Products") using the marks "BPI" and "Be Better. Be Stronger. BPI." (the "BPI Mark" and the "Be Better Be Stronger Mark," respectively).  *See* BPI Counterclaims at ¶¶ 6-8.  The BPI Mark is the subject of a valid and subsisting trademark registration, U.S. Registration No. 4,252,316, which was obtained on December 4, 2012.  *Id.* at ¶ 7; *see also* Declaration of Derek Ettinger ("Ettinger Decl."), ECF No. [48-1] at ¶ 3.  The BPI Mark has been in use since approximately January 2009.  Ettinger Decl. at ¶ 3.  On April 7, 2015, BPI began using the Be Better Be Stronger Mark on its products.  BPI Counterclaims at ¶ 8; Ettinger Decl. at ¶ 4.  According to BPI's CEO, BPI invested over $2.5 million on marketing and advertising related expenses for the purpose of building name recognition and public association with the Be Better Be Stronger Mark, and over $10 million on marketing and advertising related expenses with respect to the BPI Mark.  Ettinger Decl. at ¶ 5.  Both BPI and Beast sell and market their products online, including Amazon.com, as well as through brick and mortar locations such as GNC.  *Id.* at ¶ 7.

On or about October 18, 2015, BPI purportedly discovered that Beast had begun using the BPI Mark to advertise the Beast Products on Amazon.com (hereinafter, "Amazon").  BPI Counterclaims at ¶ 14; Ettinger Decl. at ¶ 8.  Amazon permits entities to purchase advertising keywords, which link Amazon users seeking to purchase a particular product with advertisements tailored to the user's search.  *See* BPI Counterclaims at ¶ 15; Ettinger Decl. at ¶ 8.  Beast allegedly purchased the advertising keyword "BPI" from Amazon's marketing department. BPI Counterclaims at ¶ 15; Ettinger Decl. at ¶ 8.  Additionally, on approximately November 19, 2015, BPI discovered that Beast had purchased the advertising keywords "BPI

Sports" (another federally registered mark owned by BPI), as well as "Best BCAA," "Best Creatine," and "Whey HD," each of which represents a product sold by BPI.  *See* Declaration of Frank Hedin ("Hedin Decl."), ECF No. [48-2] at ¶¶ 3-4.  When an individual searches for the term "BPI," "BPI Sports," "Best BCAA," "Best Creatine," or "Whey HD" on Amazon, "a banner advertisement for [the Beast Products] is immediately displayed at the top of the search results page, even above the search results displaying the actual BPI [P]roducts that the user sought."   BPI Counterclaims at ¶ 16; Ettinger Decl. at ¶ 8; Hedin Decl. at ¶ 4; *see also* Amazon.com Screenshot, Ettinger Decl. at Exhibit "C," ECF No. [48-1] at 12; Amazon.com Screenshot, Hedin Decl. at Composite Exhibit "A," ECF No. [48-2] at 4-8 (reproduced below).



statement

According to Beast, when the Amazon user clicks on the banner, he or she is immediately directed to a website operated by Beast.  *See* Hedin Decl. at ¶ 5; Ettinger Decl. at ¶ 8.  This statement appears to be contradicted; when a user clicks on Beast's banner advertisement they are directed to a web page within Amazon listing Beast's nutrition products.  *See* Declaration of Jennifer Jalovec ("Jalovec Decl."), ECF No. [54-4] at ¶ 5.  Regardless, BPI contends that Beast is intentionally using the BPI Mark "for the purpose of misleading and confusing potential customers of BPI [P]roducts as to the origin of the Beast [] [P]roducts advertised in the banner

advertisement and sold at the linked website, as well as to the relationship between BPI and [Beast]."  BPI Counterclaims at ¶ 20.

In addition to purchasing BPI-related keywords from Amazon, Beast has also allegedly commenced infringing activities related to the Be Better Be Stronger Mark.  Since August 29, 2015, Beast began marketing their products using a tagline which, according to BPI, is likely to cause confusion among consumers.  *Id.* at ¶¶ 21-24.  Specifically, in September 2015, Beast initiated a campaign using a tagline incorporating the stylized "B" followed by the words "Original," "Genuine," and "More" (the "B Original Tagline" or "Tagline").  *Id.*; *see also* Ettinger Decl. at ¶ 10; Examples of B More Tagline, Composite Exhibit D to Ettinger Decl., ECF No. [48-1] at 14-16.  BPI avers that the alliterative nature of the Be Better Be Stronger Mark, as well as the repetitive use of the "B" sound, results in a unique cadence or rhythm, which "provides an auditory commercial impression that is understood by consumers to signify the products of BPI."  *See* BPI Counterclaims at ¶ 22.  Because the B Original Tagline could be interpreted to read as "B Original B Genuine B More," BPI contends that the Tagline misappropriates the elements of BPI's Be Better Be Stronger Mark and is likely to cause confusion or mistake, or is likely to deceive consumers when used in connection with advertising and selling nutritional supplements.  *Id.* at ¶ 23.

Based on these alleged acts of infringement, BPI seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining Beast from using the BPI Mark or the B Original Tagline on any product labels or in any advertising or marketing, and from using any keyword advertising on Amazon involving the keyword "BPI," any registered mark belonging to BPI, or any BPI product name.  *See generally* Motion.

## II. DISCUSSION

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citing *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)); *Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). "Because a preliminary injunction is a 'drastic remedy,' the plaintiff bears the burden to 'clearly establish' each of the four elements." *Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1458 (S.D. Fla. 1998) *aff'd sub nom. Caruso v. Estefan*, 166 F.3d 353 (11th Cir. 1998) (citing *Cafe 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir. 1993)) ("As this Court has previously stated, a preliminary injunction "'is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites.'"); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). BPI asserts that it has satisfied the aforementioned elements and is, therefore, entitled to a preliminary injunction on its trademark infringement claims.[2] After thorough review

---

[2] "[T]he analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991)); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.") (citation omitted). Accordingly, the Court addresses BPI's claims simultaneously.

Case No. 15-CIV-80352-Bloom/Valle

of the evidence presented, and with the benefit of oral argument at the hearing convened on February 18, 2016, the Court concludes that a preliminary injunction is inappropriate.

## A.      Success on the Merits

In its pertinent part, the Lanham Act provides that "[a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."  15 U.S.C. § 1114(1).  In the same vein, 15 U.S.C. § 1125 provides protection for unregistered marks: "Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  In order to demonstrate a likelihood of success on the merits of a trademark infringement claim, "a plaintiff must demonstrate (1) that its mark has priority, and (2) that the defendant's use of the mark is likely to cause consumer confusion." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1327 (S.D. Fla. 2015) (citing *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1353 (S.D. Fla. 2002)); *New Wave Innovations, Inc. v. McClimond*, 589 F. App'x 527, 528 (11th Cir. 2015) ("A party who bring[s] an action for trademark infringement must show that its mark has priority and that the

7

defendant's mark is likely to cause consumer confusion.") (internal quotation and citation omitted).

> i.     **BPI's Rights as to the BPI and Be Better Be Stronger Marks**

The BPI Mark is the subject of a valid and subsisting trademark registration, U.S. Registration No. 4,252,316.  *See generally Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007) ("Registration establishes a rebuttable presumption that the marks are protectable or 'distinctive.'" (citing 15 U.S.C. § 1057(b))).  Beast does not dispute BPI's rights in the BPI Mark but, rather, challenges BPI's rights in the Be Better Be Stronger Mark.  *See* Beast's Response ("Beast's Resp."), ECF No. [54] at 5-9.

In contrast to the BPI Mark, the Be Better Be Stronger Mark is not the subject of a valid registration with the United States Patent and Trademark Office. Thus, any rights to the mark must be established under the common law.  "Under common law, trademark ownership rights are 'appropriated only through actual prior use in commerce.'"  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Tally–Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989)); *New Wave*, 589 F. App'x at 528 ("Trademark rights are gained in the common law via actual prior use in commerce.") (citation omitted).  "[T]he use of a mark in commerce . . . must be sufficient to establish ownership rights for a plaintiff to recover against subsequent users under [S]ection 43(a)." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (quoting *Planetary Motion*, 261 F.3d at 1193-94).

A two-part test is utilized to determine whether a party has proved "prior use" of a mark sufficient to establish ownership: a party must submit (1) evidence showing adoption, and (2) "use in a way sufficiently public to identify or distinguish the marked goods in an appropriate

segment of the public mind as those of the adopter of the mark." *Id.* (quoting *Planetary Motion*, 261 F.3d at 1195. Beast contends that BPI has failed to present evidence supporting its alleged rights in the Be Better Be Stronger Mark. The Court disagrees with this contention.

Swearing under penalty of perjury pursuant to 28 U.S.C. § 1746, BPI's CEO, Derick Ettinger ("Ettinger"), attests to the fact that BPI has been utilizing the Be Better Be Stronger Mark "on all of its product labels, product packs, advertisements, billboards, videos, and other promotional materials" since April 7, 2015. *See* Ettinger Decl. at ¶ 4. Contrary to Beast's assertion, this competent evidence is sufficient to demonstrate adoption.

The next inquiry concerns BPI's use of the Be Better Be Stronger Mark "in a way sufficiently public to identify or distinguish" the BPI Products to relevant consumers. *Crystal Entertainment*, 643 F.3d at 1321 (citation omitted). "Courts generally must inquire into the activities surrounding the prior use of the mark to determine whether such an association or notice is present." *Planetary Motion*, 261 F.3d at 1195 (citation omitted). "[N]ot every transport of a good is sufficient to establish ownership rights in a mark." *Id.* at 1198 (citation omitted). The mark "need not have gained wide public recognition," but "secret, undisclosed internal shipments" and other uses that are *de minimus* "are generally inadequate." *See id.* (internal citation, quotation, and formatting omitted). Among other means, ownership may be established where distribution of the mark was "widespread because the mark was accessible to anyone with access to the Internet," where "evidence established that members of the targeted public actually associated the mark with the product to which it was affixed," or where "other potential users of the mark had notice that the mark was in use in connection with the product." *Crystal Entertainment*, 643 F.3d at 1321 (internal quotations, citations, and formatting omitted). While not required, evidence of sales is considered to be "highly persuasive." *Planetary Motion*, 261

F.3d at 1195 (citation omitted).  Stated simply, this determination is to be made on a case-by-case basis, considering the "totality of the circumstances," including, among other things, sales, advertisements, and distribution of goods.   *Id.* (citing *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 433 (7th Cir. 1999)); *Freeway Ford, Inc. v. Freeway Motors, Inc.*, 512 F. Supp. 2d 1353, 1361 (M.D. Ga. 2007) ("[T]he court looks at the 'totality of the circumstances'—including sales, advertisements, and distribution of goods—in order to determine whether the mark has been sufficiently used in commerce.") (citation omitted).

The Court admits that BPI's initial submission would have been inadequate to assess whether, under the totality of the circumstances, the Be Better Be Stronger Mark has been used in a manner consistent with the establishment of common law trademark rights.[3]  Certainly, information concerning BPI's sales, advertising materials, and other related marketing details is easily within BPI's possession.  Perhaps recognizing this deficiency, however, BPI submits a multitude of materials in reply that clearly support the establishment of common law trademark rights.  Through this evidence, BPI has shown that it has used the Be Better Be Stronger Mark on social media such as Facebook and Instagram, in widely distributed print media such as Men's Fitness Magazine, as well as in other print advertisements, at trade shows, and on promotional

---

[3] Initially, the only evidence submitted to buttress the belief that the Be Better Be Stronger Mark is publicly identifiable was Ettinger's statement that BPI has placed the mark on "all" of its products and has invested "over $2.5 million on marketing and advertising . . . for the purpose of building name recognition and public association" with the Be Better Be Stronger Mark.  *See* Ettinger Decl. at ¶¶ 4-5.  In support, Ettinger offered a single image of a single product bearing the Be Better Be Stronger Mark.  *See* Composite Exhibit B to Ettinger Decl., ECF No. [48-1] at 9.  This single image failed to corroborate Ettinger's assertions regarding sales, advertising, and distribution, and generally failed to develop an association between the Be Better Be Stronger Mark and BPI's products. Ettinger also initially included an isolated image of the Be Better Be Stronger Mark and a screenshot of BPI's website.  *See* Composite Exhibit B to Ettinger Decl., ECF No. [48-1] at 8-10.  Neither of these images confirmed BPI's use of the Be Better Be Stronger Mark. The first image lacks context and the second does not even contain the Be Better Be Stronger Mark.  *See id.* at 8, 10.

items.  *See* Exhibit 4 to Declaration of Frank Hedin dated January 7, 2016, ECF No. ECF No. [64-10] at 16-20.  BPI further corroborates Ettinger's assertion that the Be Better Be Stronger Mark appears on BPI's product packaging.[4]  *See id.* at 20.  Although BPI has failed to introduce evidence of sales, such evidence is not mandatory.  *See Planetary Motion*, 261 F.3d at 1195 ("[A]lthough evidence of sales is highly persuasive, the question of use adequate to establish appropriation remains one to be decided on the facts of each case . . . .") (citation omitted).  Thus, the evidence shows that BPI has distributed the Be Better Be Stronger Mark through the Internet and print media, and has particularly targeted the public associated with the mark, to wit, sports supplement consumers.  *See Crystal Entertainment*, 643 F.3d at 1321 (noting that prior use may be established by, *inter alia*, widespread distribution over the Internet); *see also Freeway Ford*, 512 F. Supp. 2d at 1362 (finding prior use where plaintiff demonstrated that it advertised in the particular trade area).  As a result, BPI has established common law trademark rights in the Be Better Be Stronger Mark.

The remaining inquiries concern whether Beast's conduct creates a likelihood of confusion.  The Court's analysis is bifurcated in accord with BPI's arguments: (1) that Beast's purchase of Amazon keywords encompassing the BPI Mark creates initial interest confusion; and (2) that Beast's use of the B Original Tagline violates more traditional notions of trademark infringement in comparison to the Be Better Be Stronger Mark.  Consideration of these matters proves fatal as the Court finds neither argument persuasive, nullifying BPI's likelihood of success on the merits and negating any further inquiry as to the relief sought.

---

[4] Beast has highlighted one instance where a product label seemingly printed after April 2015 did not contain the Be Better Be Stronger Mark.  *See* Composite Exhibit B to Beast's Response, ECF No. [54-2] at 18.  Even assuming this label was printed subsequent to BPI's adoption of the Be Better Be Stronger Mark, this single instance does not refute the otherwise competent declaration of BPI's CEO.

### ii.    "Initial Interest" Confusion as to the BPI Mark

"Initial interest confusion . . . occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002), *as amended* (Oct. 18, 2002) (citation omitted). Other Circuits, including the Second, Seventh, and Ninth Circuits, have deemed this form of confusion actionable under the Lanham Act. *See id.* ("Initial interest confusion [] is actionable under the Lanham Act . . . ."); *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 n.4 (2d Cir. 2005) ("[P]oint-of-sale confusion is not the only confusion which the Lanham Act seeks to prevent; other forms of confusion, including reverse confusion, initial interest confusion, and post-sale confusion may also be actionable.") (citation omitted); *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) ("Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement."). The Eleventh Circuit has not spoken to the issue and, as a result, courts in this Circuit are reluctant to find this manner of confusion actionable. *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1347 (11th Cir. 2012) (declining to address whether initial interest confusion is actionable in the Eleventh Circuit); *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1283 (M.D. Fla. 2011) *aff'd*, 693 F.3d 1338 (11th Cir. 2012) (concluding that because "initial interest confusion [] is not actionable confusion in the Eleventh Circuit," plaintiff's claim for trademark infringement fails) (issue not reached on appeal); *Vital Pharm., Inc. v. Am. Body Bldg. Products, LLC*, 511 F. Supp. 2d 1303, 1318 (S.D. Fla. 2007) ("The Eleventh Circuit has not embraced this principle, and I find it unpersuasive. When the bottom line is sales of a particular product, initial confusion prior to and concluding

before the point of purchase does not seem dispositive in a likelihood of confusion analysis."). Thus, BPI requests that the Court adopt an unestablished legal theory at the preliminary injunction stage.

BPI asserts that the Court in *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) conclusively determined that the purchase of "meta tags"—a piece of code akin to the use of advertising keywords here—was actionable under the Lanham Act.  Not so.  While the Court in *North American* did note that "a company's use in meta tags of its competitor's trademarks may result in a likelihood of confusion," it explicitly declined to decide "whether initial interest confusion alone may provide a viable method of establishing a likelihood of confusion," instead opting to find that the use of "meta tags" presented a case of actual source confusion.  *Id.* at 1222 (noting that "source confusion" occurs when consumers are likely to be confused as to whether the competing products have the same "source or sponsor" or whether there is "some other affiliation or relationship between the two").  As to source confusion, more was required.  In *North American*, an electronic inquiry incorporating the plaintiff's trademarks yielded a result containing not only the defendant's competing website but, also, a description of the website which included and highlighted the plaintiff's trademarked terms.  *Id.*  The Court concluded that "[c]onsumers viewing these search results would be led to believe that [the defendant's] products have the same source as the products of the owner of the [plaintiff's] trademarks, or at least that [the defendant] distributed or sold all of the products to which the brief description referred, or that [the defendant] was otherwise related to [the plaintiff]," thereby providing a strong example of source confusion and obviating the need to address the initial interest confusion issue.  *See id.* at 1222-23.  In contrast, here, the banner advertisements BPI complains of do not contain any reference to either the BPI Mark or the Be

Better Be Stronger Mark, nor do they contain the allegedly infringing B Original Tagline.  The Court declines to adopt, at this early juncture, a yet-to-be-recognized legal theory.  Nevertheless, even assuming, *arguendo*, that initial interest confusion is a viable cause of action in the Eleventh Circuit, Beast's use of the BPI Mark through the purchase of Amazon keywords does not establish such confusion.

BPI points to no case indicating that the simple purchase of advertising keywords, without more, may constitute initial interest confusion.  As noted, "[i]nitial interest confusion . . . occurs when a customer is *lured* to a product by the similarity of the mark . . . ."  *Promatek Indus.*, 300 F.3d at 812 (emphasis added).  Thus, the "luring" becomes the critical element.  In situations such as the one presented here, the use of a keyword encompassing a competitor's terms does not necessarily produce an infringing advertisement; it is the content of the advertisement and/or the manner in which the mark is used that creates initial interest confusion.  *See North American*, 522 F.3d at 1222 (concluding that "a company's use [of] meta tags of its competitor's trademarks *may* result in a likelihood of confusion (emphasis supplied)).

The Ninth Circuit's continued examination of this field offers insight.  In *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999), the Ninth Circuit concluded that a defendant's use of the plaintiff's domain name buried in HTML code, i.e. in "keyword metatags" (which create the likelihood of a "hit" when searching for that keyword on the Internet), created initial interest confusion due to the fact that Internet users searching for the plaintiff's service via the plaintiff's mark were directed by search engine to defendant's similar service.  *See id.* at 1062-65.  Notwithstanding the fact that consumers were aware they were patronizing the defendant's service once they reached the defendant's website, the use of the plaintiff's mark in metatags diverted the plaintiff's patrons away from the

plaintiff's website, capitalizing on the plaintiff's goodwill.  *See id.*  Relying on its *Brookfield* decision, the Court in *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 (9th Cir. 2004), confirmed that the context of the advertisement was important in considering whether initial interest confusion was present.  Like Amazon here, the defendant in *Playboy* sold advertisements to competitors of the plaintiff that would be displayed when consumers utilized the defendant's search engine to inquire about the plaintiff's products.  *See id.* at 1022-23.  Like the case *sub judice*, this was accomplished through the use of keywords.  *Id.*  Of particular note in the *Playboy* Court's determination that confusion was possible was the fact that the competitor's advertisements did not clearly identify a source or sponsor of the particular advertisement and, therefore, consumers "may initially believe that [the] unlabeled banner advertisements are links to [the plaintiff's] sites or to sites affiliated with [the plaintiff]."  *Id.* at 1025; *see also id.* at 1025 n.16, 1030 (concluding that "if a banner advertisement clearly identified its source or, even better, overtly compared [the plaintiff's] products to the sponsor's own, no confusion would occur"); *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1154 (9th Cir. 2011) (recognizing the importance of "the appearance of the advertisements and their surrounding context").

Beast's banner advertisements are uniform, each containing Beast's house "B" logo, the phrase "Click to Save on Fitness Supplements," and a clear identification of the advertisement's sponsor, "Beast Sports Nutrition."  *Compare* Composite Exhibit A to Hedin Decl., ECF No. [48-2] at 4-8 (plainly identifying sponsor of advertisement) *with Playboy*, 354 F.3d at 1030 (noting that the Court was "not addressing a situation in which a banner advertisement clearly identifies its source with its sponsor's name").  Further, the link allowing consumers to "shop now" and the distinct line between Beast's advertisement and the consumer's search results alerts the

consumer viewing the page to the fact that the image is an advertisement for products separate from those already listed in the website's organic search results. Thus, unlike the advertisement's triggered in *Playboy*, Beast's advertisements do not confuse consumers into believing that the proponent of the advertisement is in some manner affiliated with the general search results displayed on the web page.

Evidence submitted by BPI to support a different contention, reinforces the Court's skepticism of BPI's far-reaching beliefs concerning the simple use of advertising keywords by competitors. *See* Exhibit A to BPI's Reply, ECF No. [64-2] at 4 (stating that "[t]he use of the competitor's brand name to trigger an ad is an accepted industry keyword advertising standard").[5] BPI's premise logically culminates in the destruction of common Internet advertising methods and unreasonably encumbers generally accepted competitive practices. That is not to say that merely because conduct is widely accepted it is unobjectionable under applicable law. However, the fact that such conduct is common practice lends credence to the conclusion that the conduct, absent actual infringement or, more specifically, confusion, is not censurable. Judge Berzon recognized this in his concurrence in *Playboy*:

> *Brookfield* might suggest that there could be a Lanham Act violation even if the banner advertisements were clearly labeled, either by the advertiser or by the search engine. I do not believe that to be so. So read, the metatag holding in *Brookfield* would expand the reach of initial interest confusion from situations in which a party is initially confused to situations in which a party is never confused. I do not think it is reasonable to find initial interest confusion when a consumer is never confused as to source or affiliation, but instead knows, or should know, from the outset that a product or web link is not related to that of the trademark holder because the list produced by the search engine so informs him.

---

[5] Although BPI attempted to distance itself from this evidence at oral argument, it is nevertheless responsible for bringing it to the Court's attention.

*Playboy*, 354 F.3d at 1034-35 (Berzon, J., concurring).   Trademark infringement can nearly always be reduced in this fashion: the fundamental question underlying every trademark infringement action is whether consumers are likely to be confused.   *See Network Automation*, 638 F.3d at 1149 (noting that the "*sine qua non* of trademark infringement is consumer confusion").   Here, Beast's purchase of various keywords on Amazon does not create such confusion.

Initial interest confusion has yet to be welcomed in the Eleventh Circuit. Even placing this uncertainty aside, Beast's conduct does not create a likelihood of confusion. Thus, BPI has failed to establish a likelihood of success as to the merits of its claims concerning the BPI Mark.

### iii.   Likelihood of Confusion as to the Be Better Be Stronger Mark

"The essential element of an action under § 43(a) is proof by the plaintiff that the alleged infringement by the defendant creates a likelihood of confusion on the part of consumers as to the source of the goods."   *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982) (citing *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 702 (5th Cir. 1981)) (further citations omitted).   "Courts in the Eleventh Circuit consider seven factors when determining whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' trade channels and customers; (5) similarity of advertising media; (6) the defendant's intent; and (7) actual confusion."   *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1327-28 (S.D. Fla. 2015) (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir.1999)).   "Of these factors, the type of mark and evidence of actual confusion are considered the most important."   *Id.* at 1328 (citing *Frehling*, 192 F.3d at 1335).   The likelihood of confusion element should not be determined "by

merely analyzing whether a majority of the subsidiary factors indicate[] that such a likelihood exists . . . [r]ather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision." *Id.* (quoting *Suntree Tech., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) and citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007)).

### (a)      The Strength of the Be Better Be Stronger Mark

In classifying the mark at issue, the district court is to determine whether the mark in question is "strong" or "weak." *Frehling*, 192 F.3d at 1335 ("Classifying the type of mark [p]laintiff has determines whether it is strong or weak.")). Four categories of distinctiveness are used to classify a mark, listed in ascending order of strength: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. *Id.* Simply put, "[t]he stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Id.* (citation omitted). "These categories are based on the relationship between the name and the service or good it describes." *TracFone*, 102 F. Supp. 3d at 1327 (citing *Frehling*, 192 F.3d at 1335). A generic mark, which refers to "a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor)," is entitled to no protection. *Frehling*, 192 F.3d at 1335 (citation omitted). A descriptive mark "describe[s] a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where glasses are sold)," and only obtains trademark protection when it is shown to possess secondary meaning. *Id.* (citation omitted); *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1540 (11th Cir. 1985) ("The general rule in this circuit is that proof of secondary meaning is required only when protection is sought for descriptive marks, as opposed to arbitrary or suggestive marks."). "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the

consumer in order to be understood as descriptive" (e.g., "penguin" to describe a refrigerator). *Frehling*, 192 F.3d at 1335 (citation omitted). "The combination of two or more descriptive words as a composite mark may result in a suggestive term." *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1244 (S.D. Fla. 2005) (citing 2 McCarthy on Trademarks and Unfair Competition § 11.26 (4th ed.)). Last, an arbitrary mark is one that "bears no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services)." *Frehling*, 192 F.3d at 1335 (citation omitted).

While the parties do not dispute the arbitrary nature of the BPI Mark,[6] the parties do, however, quarrel over the appropriate classification of the Be Better Be Stronger Mark. On the one hand, Beast contends that the Mark is descriptive, as the Mark merely references the intended benefit or result of using the BPI Products. On the other hand, BPI believes the Be Better Be Stronger Mark to be suggestive, requiring a leap of the imagination to get from the mark's references to the dietary and nutritional products bearing the mark.

The Court finds that the Be Better Be Stronger Mark is appropriately considered a suggestive mark. *Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237 (S.D. Fla. 2005), is instructive on this point. In *Tancogne*, the plaintiff sought protection for the composite term "Fair & White," a term used in relation to a line of skin lightening agents. *Id.* at 1245. The terms were not used to "describe ingredients of the products or their quality" but, rather, were used to merely suggest the product's intended effects. *Id.* Thus, the terms "arouse the imagination, and conjure up an image of what the products are intended to do: make the skin fair and white," and the mark, therefore, was entitled to protection as a suggestive mark. *Id.* Similarly, the terms "Be

---

[6] The BPI Mark is properly considered to be arbitrary as "BPI" is merely an acronym for the owner of the Mark, Brain Pharma, Inc., which bears no relationship to the nutritional and dietary products BPI markets and sells.

Better" and "Be Stronger," while undoubtedly related to the sports and nutrition industries, do not immediately "describe a characteristic or quality of an article or service," *Frehling*, 192 F.3d at 1335, but instead suggest the intended results, that is, to be "better" and "stronger." However, the Court notes that the leap required is only minor and, therefore, the Be Better Be Stronger Mark, while undoubtedly suggestive, falls on the lower end of the strength continuum for suggestive marks. *See Tancogne*, 408 F. Supp. 2d. at 1245 (finding that because the mark was only borderline suggestive, "the protection it receives . . . requires taking into account the nature of the alleged infringing product, the scope of the infringement, and the degree of competition between the products at issue").

### (b)   *Similarity of the Mark*

In comparing marks, the court "considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337 (citation omitted); *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010) (citing *E. Remy Martin & Co. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985)). "The likelihood of confusion is greater when an infringer uses the exact trademark." *Turner Greenberg Associates, Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004) *aff'd*, 128 F. App'x 755 (11th Cir. 2005) (citation omitted). BPI contends that the B Original Tagline appropriates the Be Better Be Stronger Mark's cadence and sound, utilizing the same alliteration and alternation between words beginning with "B" and expressive adverbs.

Beast first disputes BPI's portrayal of the B Original Tagline, asserting that it is not pronounced "B Original B Genuine B More" but, rather, "B Original. Genuine. More." Two iterations of the Tagline appear with respect to Beast's products:

Case No. 15-CIV-80352-Bloom/Valle



Composite Exhibit D to Ettinger Decl., ECF No. [48-1] at 13-16.  For ease of reference, the Be Better Be Stronger Mark is reproduced here:

Composite Exhibit B to Ettinger Decl., ECF No. [48-1] at 8-9.   While not a verbatim reproduction of the Be Better Be Stronger Mark, the first production of the B Original Tagline reproduced above is most logically read to incorporate a repeated "B" sound resulting in a rhythm and auditory impression similar, but not identical to, the sound produced by a verbalization of the Be Better Be Stronger Mark.   The latter iteration, however, does not immediately conjure the same pattern.   Yet, further inspection reveals that even the second rendition seems to require an articulation with a repeating "B" sound.   Notably, Beast's house mark "B" appears in the same color as the final word, "More," thereby indicating that the two are not so disconnected as Beast now argues.   Consequently, the sound of the marks appears to be strikingly similar.

Regardless of the appropriate pronunciation, other elements render the marks dissimilar, particularly, the incorporation of each party's house mark.   Courts have found that a mark's

repeated appearance "in conjunction with the parties' house mark" to be a "'critical factor' that 'has the potential to reduce or eliminate likelihood of confusion.'"  *Stuart J. Kaufman, M.D. & Associates, P.A. v. Bausch & Lomb Inc.*, No. 8:13-CV-461-T-33EAJ, 2013 WL 6154166, at *7 (M.D. Fla. July 25, 2013) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002)); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 n.10 (11th Cir. 2007) ("The physical context in which a mark appears also enters into the likelihood-of-confusion analysis in cases where a mark appears alongside a house brand.").  Both the Be Better Be Stronger Mark and the B Original Tagline appear, apparently exclusively, alongside Beast and BPI's respective house marks: the trademarked "B" for Beast, and "BPI" for BPI.  Accordingly, even when accepting the comparable auditory impressions of the marks—as well as the physical similarity, including the use of a similar shade of blue in conjunction with a black "B" or "Be"— the likelihood of confusion is substantially reduced by the overall impression and presentation of the marks.  The inclusion of each party's house mark serves to distinguish each mark from the other and clearly designate the source of each good bearing the respective marks.  *See Stuart J. Kaufman*, 2013 WL 6154166, at *7 (finding that the defendant's use of the mark "consistently in conjunction with its house name undercut[]" the plaintiff's accusations of confusion).

Further, the recurring syllable which provides the underlying similarity is the common verb "be."  At least one Court in this District has found that, among other things, the simple fact that the competing marks incorporate a form of a common word, "does not render the marks similar."  *See Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1460 (S.D. Fla. 1998) *aff'd sub nom. Caruso v. Estefan*, 166 F.3d 353 (11th Cir. 1998) (finding no similarity based on the "mere fact that both marks incorporate a form of the common word 'bongo'" and collecting cases on the subject) (citations omitted).  Another aspect which serves to distinguish

the marks in question, albeit only slightly, is the syllabic arrangement.  The B Original Tagline contains three-syllable words ("Original," "Genuine"), whereas the Be Better Be Stronger Mark contains two-syllable words ("Better," "Stronger").  While the "likelihood of confusion cannot be predicated on dissection of a mark," *Tancogne*, 408 F. Supp. 2d at 1247 (citation and alteration removed), the number of syllables present in each mark undoubtedly affects the tempo of the mark's pronunciation, as well as the mark's intonation, depending on the speaker, thereby altering the overall impression of the respective marks.[7]

Based on these considerations, this factor is neutral in the Court's analysis.  While the B Original Tagline is oddly reminiscent of the Be Original Be Stronger Mark, any similarity between the marks is repudiated by the considerations discussed above.

### *(c)     Similarity of Trade Channels and Advertising Methods*

Where the marks in question relate to similar products and the products in question are advertised and sold through similar means, a greater likelihood of confusion results.  *Turner*, 320 F. Supp. 2d at 1332-33 (citing *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1542 (11th Cir.1986); and *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983)); *see also John H. Harland Co.* at 976 ("The greater the similarity between the products and services, the greater the likelihood of confusion.") (citation omitted).  The products on which the marks in question appear are the same for all intents and purposes; both the Be Better Be Stronger Mark and the B Original Tagline are utilized on sports nutrition supplement labels.  Further, the identity of retail

---

[7] The Trademark Trial and Appeal Board's decision in *Country Life Ins. Co. & Country Mut. Ins. Co.*, 91184015, 2010 WL 4035146 (TTAB Sept. 28, 2010), does not require a different conclusion.  Therein, the TTAB concluded that the marks "Real People Real Answers Real Quick" and "Real Solutions. Real People. Real Smart." were likely to cause consumer confusion.  *See id.* at *7.  Admittedly, *Country Life* provides a useful example; however, the marks at issue in *Country Life* did not contain the dissimilarities discussed herein.

outlets and purchasers, as well as the means of advertising the products are similar.  Beast does not voice an opposition to BPI's portrayal of these facts. These factors clearly weigh in favor of finding a likelihood of confusion.

### (d)    *Beast's Intent*

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."  *Frehling*, 192 F.3d at 1340 (citing *John H. Harland Co.*, 711 F.2d at 977).  "The intent of the defendant need not be conscious; 'intentional blindness' will also support a finding that defendant's intent was improper."  *Cross Country Home Servs., Inc. v. Home Serv. USA Corp.*, No. 08-64156-CIV, 2010 WL 331752, at *8 (S.D. Fla. Jan. 20, 2010) (citing *Frehling*, 192 F.3d at 1340).  BPI has presented little to no evidence that the B Original Tagline was adopted with the specific intent necessary.  Other than the marks' alleged similarities, which this Court has determined to be inconsequential when examined in light of their overall impression, there is simply a dearth of evidence that Beast intended to capitalize on the goodwill of the Be Better Be Stronger Mark.  Consequently, this factor does not weigh in favor or against finding a likelihood of confusion.

### (e)    *Evidence of Actual Confusion*

Evidence of actual confusion provides the most persuasive evidence of actual confusion. *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010) (citing *Alliance Metals, Inc. of Atlanta v. Hinely Indus.*, 222 F.3d 895, 907 (11th Cir. 2000); and *John H. Harland Co.*, 711 F.2d at 978) ("[E]vidence of actual confusion is the most weighty consideration.").  That being said, evidence of actual confusion is not obligatory; a court may conclude that a likelihood of confusion exists despite no evidence of actual confusion.  *Id.* at

24

937; *see, e.g., TracFone*, 102 F. Supp. 3d at 1332 (finding likelihood of confusion where no actual evidence of confusion had been produced).  BPI admits that it has no evidence of actual confusion.  Accordingly, this factor does not favor a finding of likelihood of confusion.

(f)      <strong><em>The Doctrine of Unclean Hands</em></strong>

Beast asserts that the doctrine of unclean hands also militates against BPI's likelihood of success on the merits.  It is a cardinal rule of equity that "he who comes into equity must come with clean hands." *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1366 (S.D. Fla. 2006) (quoting *Precision Instrument v. Automotive Maintenance Machinery*, 324 U.S. 806, 814 (1945)); *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933) ("He who comes into equity must come with clean hands.").  Indeed, "[i]t is a self-imposed ordinance that closes the door . . . to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  *Id.*  This defense, the affirmative defense of unclean hands, provides an equitable defense to a Lanham Act infringement claim.  *See Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1355 (11th Cir. 1983); *see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("Unclean hands is a defense to a Lanham Act infringement suit." (citing *CIBA–GEIGY Corp. v. Bolar Pharmaceutical*, 747 F.2d 844, 855 (3d Cir. 1984), *cert. denied*, 417 U.S. 1137 (1985))).   Well over one-hundred years ago, the Supreme Court made clear that

> when the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in his advertisements and business, be himself guilty of any false or misleading representation; that if the plaintiff makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; that where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, no property can be

25

Case No. 15-CIV-80352-Bloom/Valle

> claimed on it, or, in other words, the right to the exclusive use of it
> cannot be maintained.

*Clinton E. Worden & Co. v. California Fig Syrup Co.*, 187 U.S. 516, 528 (1903).  A district court is granted discretion in determining the applicability of the doctrine.  *Shatel Corp.*, 697 F.2d at 1355 (citing *Wolf v. Frank*, 477 F.2d 467, 474 (5th Cir.), *cert. denied*, 414 U.S. 975 (1973).  Ultimately, the affirmative defense of unclean hands requires the proponent to show that (1) "the plaintiff's wrongdoing is directly related to the claim," and (2) that "the defendant was personally injured by the wrongdoing."  *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

According to Beast, BPI has purchased the Google.com advertising term "bsn no xplode and cellmass," Beast's Resp. at 18-19, as well as keywords related to Beast's products.  *See* Motion for Leave to Submit Supplemental Evidence, ECF No. [71]. Review of the evidence neither confirms nor refutes Beast's contentions and does not otherwise provide a basis on which to adjudge the validity of this defense.  First, BPI has presented evidence countering Beast's assertion that BPI has purchased Google.com advertising keywords related to Beast's products. *See* Exhibit C to Motion to File Supplemental Evidence, ECF No. [79] (filed under seal).  Second, Beast's reference to the terms "bsn no xplode and cellmass" is appropriately deemed a red herring.  These terms refer to a third party's products and are simply irrelevant to Beast's unclean hands defense, which requires evidence that the Beast itself was harmed by the purported wrongdoing.  *See Bailey*, 776 F.3d at 801 (providing that an unclean hands defense requires a showing that the alleged wrongdoing is "related to the claim" and that the proponent of the defense "was personally injured by the wrongdoing").

### iv.       BPI has failed to establish a Likelihood of Confusion

On balance, the factors weigh against finding a likelihood of confusion between the Be Better Be Stronger Mark and the B Original Tagline.  First, BPI's contentions as to initial interest confusion are unrecognized in this Circuit and, accordingly, do not present a strong basis on which to issue a preliminary injunction.  Nevertheless, the banner advertisements BPI protests make clear that Beast, not BPI, is the proponent of the particular product.  As a result, consumers viewing the advertisements are unlikely to be confused as to what, if any, relationship or affiliation exists between Beast and BPI.

As to the Be Better Be Stronger Mark, BPI's arguments concerning potential confusion are unpersuasive.  First of all, the Be Better Be Stronger Mark falls on the low end of the suggestive-mark spectrum and, therefore, is properly considered to be only marginally strong. *See Tancogne*, 408 F. Supp. 2d at 1245 (finding borderline suggestive mark to be entitled to "a modicum of protection against infringement"); *Frehling*, 192 F.3d at 1335 ("The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives.").  Second, although parallels exist between the Be Better Be Stronger Mark and the B Original Tagline, the overall impression of the marks reveals that simultaneous use in commerce would likely not result in consumer confusion.  The remaining factors do not sway the Court one way or the other; while Beast and BPI utilize similar trade channels and advertising methods, there is no evidence of actual confusion and no evidence that Beast adopted the B Original Tagline to capitalize on BPI's reputation.

In sum, because BPI fails to establish that consumer confusion will arise from Beast's conduct, it necessarily fails to demonstrate a *substantial* likelihood of success on the merits.  *See New Wave Innovations, Inc. v. McClimond*, 589 F. App'x 527, 528 (11th Cir. 2015) ("A party

Case No. 15-CIV-80352-Bloom/Valle

who bring[s] an action for trademark infringement must show that its mark has priority *and* that the defendant's mark is likely to cause consumer confusion." (internal quotation and citation omitted) (emphasis supplied)).  Given the drastic nature of the remedy sought and BPI's failure to satisfy the first of the four requisite elements, the Court's inquiry comes to a close and the Motion must be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants, BPI Sports, LLC and BPI Sports Holdings, LLC's Motion for Preliminary Injunction, **ECF No. [48]**, is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 22nd day of February, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

28